# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

MARKALE IAN LUNDY,

                   Petitioner,      :           Case No. 2:24-cv-3806

     - vs -                           District Judge Michael H. Watson
                                    Magistrate Judge Michael R. Merz

WARDEN, Southern Ohio
 Correctional Facility

                                :
           Respondent.

---

# SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 15) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition as barred by the statute of limitations (the "Report," ECF No. 14).  District Judge Watson has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 17).

To provide the Court and the parties with one document on which to focus, the original Report and Recommendations (ECF No. 14) is withdrawn and this Report substituted for it.

**The Statute of Limitations and Actual Innocence**

In the Petition, Lundy anticipated Respondent's statute of limitations defense.  Queried

1

about timeliness at Item 18 of the Petition, he responded

> I have always maintained my innocence and I am actually innocent of these crimes.  I acknowledge that my habeas corpus petition is late, but my conviction was based on an unreasonable determination of the facts in light of the evidence presented at my trial.  Also I will produce new evidence sufficient to persuade the district court that no juror, acting reasonably, would have voted to find me guilty beyond a reasonable doubt.  I support my constitutional error with new reliable exculpatory scientific evidence.  For these reasons I should not be barred from proceeding with my petition, and pray that I am granted the gateway.

(Petition, ECF No. 1, PageID 13).

As Petitioner predicted, Respondent raised a limitations defense, calculating the time for filing under 28 U.S.C. § 2244(d)(1)(a) as running from the last date when Petitioner could have sought review by the Supreme Court (Return of Writ, ECF No. 11, PageID 973, *et seq*.). Petitioner's Reply takes no issue with that calculation, but reiterates his actual innocence claim (ECF No. 12).

After transfer of the case from Chief Magistrate Judge Bowman, the undersigned filed the Report, concluding Petitioner's actual innocence claim was not persuasive.  No alternative analysis of the merits was offered.

Petitioner objects that the Report mischaracterizes the revised DNA report and no reasonable juror would vote to convict on the inconsistent testimony of the victims (ECF No. 15).

**Litigation History**

The history of this case is important, given when various relevant claims were made, because the timing of events in the case bears on the credibility of Petitioner's actual innocence claim.

2

The offenses of which Lundy was convicted occurred on May 13, 2012.  He was indicted

August 6, 2012 (Indictment, State Court Record, ECF No. 10, Ex. 1).  The case proceeded to jury

trial November 18, 2013.  The State presented testimony from Joseph Valiski, Andrea Newman,

Philip Walden, Amoreena Pauley, and SeTicia Hayes; Lundy presented no evidence at all, either

from himself or others. (Transcript, State Court Record, ECF No. 10-1, 10-2, PageID 548 and

784).  The jury then convicted Lundy of all charges against him including aggravated robbery,

aggravated burglary, kidnapping, attempted murder, and felonious assault (Verdicts, State Court

Record 10, Ex. 3).   At sentencing the prosecutor emphasized Lundy's long felony record

(Transcript, State Court Record ECF No. 10-3, PageID 945-46).  The trial judge merged Counts

Four and Five as allied offenses of similar import and imposed an aggregate sentence of twenty-

two years.  (Judgment Entry, State Court Record, ECF No. 10, Ex. 4).

Lundy appealed raising as his single assignment of error that the verdicts were against the

manifest weight of the evidence.  The Tenth District found the victims, Andrea Newman and

SeTicia Hayes, became acquainted when they were incarcerated together and then became

roommates after their release.  *State v. Lundy,* 2014-Ohio-3934, ¶ 3 (Ohio App. 10th Dist. Sept. 11,

2014)(copy at State Court Record, ECF No. 10, Ex. 153)[1].  Newman testified she met Lundy on a

bus in March 2012, and he visited several times at her apartment when Hayes was not there. *Id.*

The Tenth District found that on the day of the offenses,

> Newman invited appellant to her apartment on May 13, 2012. Upon
> arriving, appellant asked Newman to contact Hayes, who was not
> home, so he could purchase marijuana from her. Newman testified
> she and Hayes both used marijuana, and Hayes sold it from the
> apartment along with Hayes' boyfriend, Scoop.
>
> {¶ 4} Newman contacted Hayes via text, and Hayes informed
> Newman she had a flat tire but help was on the way. Subsequently,

---

[1] Under 28 U.S.C. § 2254(e)(1), state court findings of fact are presumed to be correct unless rebutted by clear and
convincing evidence.  *Clark v. O'Dea,* 257 F.3d 498, 506 (6th Cir. 2001).

appellant went into the kitchen, and when he returned, he pulled Newman's hair back, got close to her ear, and said, "where is the * * * money"? (Tr. Vol.I, 59.) Newman told appellant she did not have any money. Appellant said, "where's my four grand," and stabbed her in the neck. (Tr. Vol.I, 60.) Newman did not know what he was talking about. Appellant made Newman go upstairs to Hayes' bedroom and search the room for money. While Newman was searching the closet, appellant stabbed her in the neck again. Then Hayes came home, and appellant went downstairs.

{¶ 5} Newman heard appellant yell, "where's the money"? (Tr. Vol.I, 65.) Then she heard Hayes tell appellant it was upstairs and ask him not to hurt her. Eventually, Hayes and appellant came into Hayes' bedroom. Hayes started to cry and asked appellant if Newman was dead. Newman heard appellant say he had broken Newman's jaw and knocked her out. Newman then heard appellant going through Hayes' purse and ask if she "had anything else." (Tr. Vol.I, 67.) Then Hayes and appellant went into the bathroom. Newman heard a lot of noise and what sounded like appellant talking to himself or someone else on a phone. Newman did not actually see appellant with a phone. Newman heard appellant mention the name Tony and say Scoop[2] shot his cousin in the face. Appellant then came back into Hayes' room and stabbed Newman several times in the chest. Appellant told Hayes she "picked the wrong guy," mentioned Scoop, and again brought up his cousin's shooting. (Tr. Vol.I, 72.)

*State v. Lundy, supra*.

Regarding DNA evidence, the Tenth District found on direct appeal:

{¶ 10} The state introduced evidence that Hayes, Newman, and appellant could not be excluded as contributors to a DNA mixture on a cell phone charger cord found at the apartment. In addition, the state introduced evidence that Newman was the major contributor to a DNA mixture on a curling iron cord, and Hayes and appellant could not be excluded as minor contributors to the mixture.

Newman and Hayes had identified these two cords as used by Petitioner to restrain Hayes during the robbery.

Evaluating the evidence altogether, the Tenth District acknowledged inconsistencies

---

[2] "Scoop" was identified as Hayes' boyfriend and a marijuana dealer, but without a name or physical description.

between what Newman and Hayes had said about the crimes before trial and their trial testimony, but noted that the jury was in the best position to resolve those inconsistencies. The court particularly noted that Newman had been hospitalized and in rehabilitation for months and the jury could reasonably have attributed Newman's pre-trial description of "two white guys" as the perpetrators to her fear that Lundy would return and succeed in killing her if she didn't tell the story he had ordered her to tell. As to weight of the DNA evidence, the court stated stated:

> {¶ 20} Finally, as appellant points out, DNA evidence taken from the apartment was not conclusive. Even so, appellant could not be excluded as a contributor to DNA mixtures on the two cords which were presumably used to tie up Hayes. This DNA evidence, when coupled with the testimony of Hayes and Newman, amply supports appellant's convictions.

*State v. Lundy, supra.*

The Tenth District affirmed Lundy's conviction on September 11, 2014. On March 25, 2015, the Ohio Supreme Court declined to accept a further appeal. The conviction on appeal became final ninety days later on June 23, 2015, the last day on which Lundy could have sought review by the United States Supreme Court. The one-year statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") and codified at 28 U.S.C. § 2244(d) thus expired June 23, 2016.

Lundy signed his Petition in this case on July 11, 2024 (ECF No. 1, PageID 16). Assuming that he deposited it in the prison mail system on that date, July 11, 2024, is deemed the date of filing.[3] Lundy acknowledges that this filing is untimely, but relies on his claim of actual innocence

---

[3] Petitioner did not complete the declaration of mailing included in the Standard Form for § 2254 Petition. See PageID 15. Federal courts treat prisoner filings as made on the date they are deposited in a prison mailing system. In *Houston v. Lack*, 487 U.S. 266 (1988), the Supreme Court adopted this rule for notices of appeal. The same rule applies to filing a petition for writ of habeas corpus or § 2255 motion to avoid the statute of limitations. *Towns v. United States*, 190 F.3d 468 (6th Cir. 1999).

to excuse his lateness.

The Report sets out the governing standard for actual innocence claims as enunciated in

*McQuiggin v. Perkins*, 569 U.S. 383 (2013):

> [A]ctual innocence, if proved, serves as a gateway[4] through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin* at 386-87. From *McQuiggin* we learn that successful actual innocence claims will be

rare and that they will be successful only if they persuade the district court that in light of all the

evidence, new and old, no juror, acting reasonably, would have voted to find the petitioner guilty.

From *Schlup v. Delo*, 513 U.S. 298 (1995), we learn what kind of new evidence is

necessary:

> "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled

---

[4] Hence Petitioner's reference to the "gateway" in his Petition.

> however, that the actual innocence exception should "remain rare"
> and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Since his conviction became final on direct review, Petitioner has acquired two pieces of evidence which he believed entitled him to a new trial, (1) the purported eyewitness account of Derrick Watson (hereinafter "Watson Evidence") and (2) the report of the Columbus Crime Lab on reexamination of the DNA evidence presented at trial (hereinafter the "DNA Evidence"). The course of presentation of these two pieces of evidence is discussed separately below.

**The Watson Evidence**

Derrick Watson was a fellow inmate of Lundy at Ross Correctional Institution in 2015 who allegedly met Petitioner the same month the Ohio Supreme Court declined jurisdiction. On October 16, 2017, represented by Attorney Jennifer Bergeron of the Ohio Innocence Project, Lundy filed a **second** motion for leave to file a delayed motion for new trial[5] (Motion, State Court Record, ECF No. 10, Ex. 23). The relevant facts were represented by counsel to be:

> This motion for leave is based on newly discovered evidence from a previously unknown witness, Derick Watson. In 2015, Watson met Lundy in Ross Correctional. After hearing about the crimes Lundy was incarcerated for, Watson, a white male from rural Guernsey County, revealed that he was present in the apartment with Newman when the crime occurred. According to Watson, before the stabbing Newman was anxiously awaiting the arrival of a male, to whom Newman owed a substantial amount of money for drugs. Watson's affidavit describes Newman sitting in the living room working on her nails when a male and another female arrived. The male aggressively approached Newman about the unpaid debt, and Newman attempted to stab the man with her metal nail file. The man took the metal nail file away from Newman and stabbed her several

---

[5] Under Ohio law a motion for new trial on the basis of newly discovered evidence which has been discovered more than 120 days after verdict may be filed only with permission of the trial court. Ohio R. Crim. P. 33(B).

7

> times. At that point, Watson fled out the back door in the kitchen,
> near where he had been sitting. Importantly, Watson averred that the
> man he saw stab Newman was not Markale Lundy.

*Id.* at PageID 137-38.  Watson's Affidavit was sworn to June 3, 2015. *Id.* at PageID 164.  Lundy

had sought the assistance of the Ohio Innocence Project in November 2014 and sent them a packet

of information including Watson's affidavit on June 24, 2015. *Id.* at PageID 153.   Attorney

Bergeron describes the Innocence Project's lengthy review process to explain why it took from

June 2015 until October 2017 to file the second motion for leave to file a motion for new trial. *Id.*

at PageID 152-56.

The Franklin County Court of Common Pleas denied the second motion on July 2, 2019

concluding that two years was an unreasonable amount of time between discovery of Watson's

affidavit and the filing of the second motion (Entry, State Court Record, ECF No. 10, Ex. 26,

PageID 213).    Still represented by the Innocence Project, Lundy appealed, claiming it was an

abuse of discretion not to allow him to file a motion for new trial.  The Tenth District rejected

Lundy's assignments of error, concluding that a generalized claim of backlog of cases at the

Innocence Project was insufficient to justify the delay in filing.  *State v. Lundy*, 2020-Ohio-1585

¶ 19 (Ohio App. 10th Dist. Apr. 21, 2020)(copy at State Court Record, ECF No. 10, Ex. 31)("*Lundy
II*").

The Ohio Supreme Court accepted Lundy's appeal (Entry, State Court Record, ECF No. 10,

Ex. 40).  However, the appeal was dismissed on joint motion because the trial court had granted

leave to file a motion for new trial.  In that motion, the parties recited that a representative of the

State of Ohio had met with Derrick Watson who had confirmed his affidavit (Joint Motion, State

Court Record, ECF No. 10, Ex. 46).  On June 9, 2021, the Franklin County Prosecutor agreed that

Lundy should have an evidentiary hearing at which Watson would testify and the court would

decide if Crim. R. 33 was satisfied. (State Court Record, ECF No. 10, Ex. 49). That hearing was held January 14, 2022. Watson apparently did not appear and both parties moved orally to dismiss the new trial proceedings to which they had previously agreed. A week later Judge McIntosh dismissed the new trial motion without prejudice and without explanation (Entry, State Court Record, ECF No. 10, Ex. 50).

Lundy has not explained why the motion for new trial was abandoned and no transcript of the January 14th hearing has been filed[6]. Perhaps Mr. Watson failed to appear for what would have been the first testing of his story under cross-examination[7]. Whatever the reason, Lundy has abandoned the Watson evidence as a basis for obtaining a new trial: the motion for new trial on the basis of the Watson evidence has not been re-filed. In the present case he relies only on the DNA evidence discussed below. It is also noteworthy that the Ohio Innocence Project which had invested several years in attempting to get a new trial through presentation of the Watson evidence has apparently abandoned the quest. Although it adverted to the DNA evidence in its motion for new trial, it does not represent Lundy in this habeas corpus case; he is proceeding here *pro se*.

**The DNA Evidence**

On November 12, 2014, a year after verdict, Lundy, represented by the same attorney who represented him at trial, filed his first motion for leave to file a delayed motion for new trial based on the DNA evidence[8] (Motion, State Court Record, ECF No. 10, Ex. 20). He describes how

---

[6] The Return of Writ does not indicate that this hearing was ever transcribed. Since no appeal was taken, no transcript would have been needed for that purpose.
[7] Watson's Affidavit claims he did not come forward at the time of trial or before May, 2015, because he had been on post-release control and feared speaking up would jeopardize his status.
[8] Regarding Ohio practice on motions for new trial, see footnote 4, *supra*.

discovery of the DNA evidence came about:

> In the instant case the newly discovered evidence relates to opinions, interpretations, and reporting guidelines of DNA evidence that was submitted at trial. The Columbus Police Department has been reviewing cases with DNA results from 2009-2013, and updating counsel as to changes in those prior reports. Defendant was first made aware of this updated report in September of 2014, which is nearly ten months past the verdict which occurred on November 25th, 2013.

*Id.* at PageID 125-26.  The motion does not discuss the weight of the new evidence but merely argues for why it was not previously discovered.  Judge McIntosh denied the motion, finding that the only asserted new evidence was

> a change in the reporting procedure for DNA results by the Columbus Police Department ("CPD")" and . . . a change in CPD's DNA reporting policy is not "newly discovered evidence." Defendant had the original CPD DNA analysis report prior to his trial. Defendant could have, in the exercise of due diligence, retained an expert to discuss any flaws that could have existed [in] CPD's DNA reporting procedure for his trial.  Furthermore, the Court cannot find that the newly discovered evidence discloses any possibility that the outcome of a new trial would be different from the first trial because the DNA results are not contested.

(Entry, State Court Record, ECF No. 10, Ex. 22, PageID 133).

Defendant did not appeal from this decision, entered December 29, 2014.  Several months later he met Derrick Watson and began to pursue that route to a new trial, although the filing was delayed until October 2017.  Although the Innocence Project attorneys knew of the DNA evidence and mentioned it in their motion (ECF No. 10, Ex. 23, PageID 146-48), they did not rely on it.

As described in the Petition and attached as an exhibit, the new DNA evidence consists of two pages (ECF No. 1-4, PageID 35-36) and reads in pertinent part:

> A DNA report for this case was previously released on May 28, 2013. As a result of changes in interpretation and reporting guidelines, an additional DNA report is being issued.

10

DNA was extracted and STR typing was previously performed on the items listed below:

Description:
Swabs collected from cord ends
Swabs collected from curling iron cords
Probable blood swabs from upstairs bathroom sink
Oral standard from Setecia Hayes
Oral standard from Markale i. Lundy
Oral standard from Andrea Newman
No interpretable DNA profile was previously obtained from 004-A 1-001 .
The DNA profile previously obtained from 004-A2-001 is consistent with a mixture of at least two individuals including a major female contributor. Andrea Newman cannot be excluded as the contributor of the major component in this mixture DNA profile.

The probability of selecting an unrelated individual at random who could.be the source of this DNA profile is approximately: 1 in 7 43.5 quintillion for Caucasians, 1 in 340.4 quadrillion for African-Americans, and 1 in 55.28 quintillion for Hispanics. To a reasonable degree of scientific certainty, Andrea Newman is the source of the major component in this profile (excluding Identical twins). Due to the limited data obtained, no interpretations will be made for the minor component of this DNA profile .

(Petition, ECF No. 1-4, PageID 35-36). The Report is signed by Amanda Mendoza as a forensic scientist with the Columbus Police Crime Lab.

**Evaluating the DNA Evidence**

In deciding that the DNA evidence did not entitle Lundy to a new trial, the Common Pleas Court held:

The Court finds that a change in CPD's DNA reporting policy is not "newly discovered evidence." Defendant had the original CPD DNA analysis report prior to his trial. Defendant could have, in the exercise of due diligence, retained an expert to discuss any flaws

11

> that could have existed in CPD's DNA reporting procedure for his trial.
>
> Furthermore, the Court cannot find that the newly discovered evidence discloses any possibility that the outcome of a new trial would be different from the first trial because the DNA results are not contested.

(Decision and Entry, State Court Record, ECF No. 10, Ex. 22, PageID 133).

What Judge McIntosh may not have known but what Petitioner reveals to this Court is that his attorney did retain a DNA expert, Julie A. Heinig, Ph.D., but Dr. Heinig did not testify. In his Petition, Lundy accuses his trial attorney of ineffective assistance of counsel for not calling her. He claims that her findings were the same as the revised Columbus Police Department report, but he provides no proof of that statement (Complaint, ECF No. 1-5, PageID 38).

The 2014 DNA Report is certainly new within the meaning of that term in *Schlup* and *McQuiggin*: it did not exist at the time of trial and could not have been entered into evidence. It is also scientific evidence. The Court is not advised as to why it came into existence. Petitioner reports that the Columbus Police Department was conducting a review of all DNA reports from 2009 to 2013, so the revised report was not generated because of any suspected error in the original report. Ohio R. Evid. 702, patterned on the cognate Federal rule and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), governs tightly the admission of expert testimony and would have been applicable to the admission of DNA-related testimony at trial. Petitioner makes no complaint that the testimony at trial did not comply with Rule 702.

Petitioner offers no accompanying expert testimony explaining what the revised report means. The testimony at trial was that the relevant DNA sample did not exclude Petitioner as a possible contributor. In closing the prosecutor argued that the jury could infer from that testimony that Lundy was present. Trial counsel made no objection to that argument. Petitioner argues that

this was the evidence that convicted him, but the jury also had the eyewitness testimony of Newman and Davis.

Petitioner argues the revised report exonerates him, but it does not. Instead, it offers no analysis of the DNA sample involved. It would be an entirely different matter if the Crime Lab issued a new report which said the old report was wrong and Lundy could be excluded as a contributor. But that is not what we have. At best the new report undermines the testimony at trial. This is not the sort of evidence required by *Schlup* which requires proof that is exonerative rather than merely undermining the evidence at trial. As the Sixth Circuit held in *Hubbard v. Rewertz*,

> We simply require that a petitioner show the probability of his *innocence*, rather than merely impeach the State's case. This means that a defendant must put forth some type of reliable evidence that is exonerative in nature. That evidence need not *conclusively prove* his exoneration to make the gateway showing, but it must, at minimum, go towards his innocence. *See Schlup*, 513 U.S. at 324, 115 S.Ct. 851 (describing "reliable evidence" of innocence as "exculpatory"); *see also Hyman v. Brown*, 927 F.3d 639, 665 (2nd Cir. 2019) (recanting eyewitness of shooting did not establish innocence because failure to inculpate the petitioner does not exonerate the petitioner). In other words, the new evidence mirrors requiring a showing that the petitioner did not do the crime.

98 F.4th 736, 747 (6th Cir. 2024). At best, the new evidence, if properly presented by an expert witness, would say Lundy's presence at the crime scene cannot be proved by DNA evidence. In contrast, the Watson evidence, if it were properly before the Court, would be exonerative because Watson's Affidavit claims to have witnessed the stabbing and says it was someone other than Lundy.

**The Claim of Actual Innocence Considered as a Whole**

Although the Magistrate Judge concludes the new DNA evidence is not evidence of the sort required by *Schlup*, it is appropriate to evaluate Petitioner's claim of actual innocence as a whole because of the way in which Petitioner presents it.

At virtually every juncture in the case Lundy has repeated that he has "always maintained my innocence and I am actually innocent of these crimes." (Petition, ECF No. 1, PageID 13). His Innocence Project attorneys repeated that claim on his behalf. The first sentence of his Brief on Appeal, filed by Attorney Bergeron, reads "Appellant Markale Lundy has always maintained his innocence in this case." (State Court Record, ECF No. 10, Ex. 28, PageID 226). **But these are pleading claims, not evidentiary claims.** When a person wants to establish a fact and he has tried to tell the story several different ways, before believing it the listener may well ask about inconsistencies in the story or missed opportunities to tell it.

Lundy had an absolute right to tell the jury his side of the story, but he chose not to take the stand having heard what Newman and Hayes had to say under oath. Of course he also had an absolute right not to testify and probably was advised not to do so because he would have been impeached by his long felony record. That record cautions against accepting his unsworn claim of innocence at this stage.

Lundy presumably believed Derrick Watson's story or he would not have presented it first to the Innocence Project to obtain representation and then to the Ohio courts. He no longer relies on its for reasons he has not explained. If Watson is to be understood as claiming Lundy was not present, Lundy would know that and also know where he was at the time. So where are the alibi witnesses?

14

Considering the 2014 DNA Report along with the evidence actually presented at trial, the Magistrate Judge is not persuaded that no juror, acting reasonably, would have voted to convict Petitioner.  His claim of actual innocence to excuse his untimely filing should be rejected.

**Alternative Analysis of the Merits**

 The original Report contained no analysis of the merits of Petitioner's Grounds for Relief. The Magistrate Judge expects Petitioner will object to this Substituted Report and offers the following analysis of the merits in the event the District Judge should reject the foregoing actual innocence analysis.

The Petition pleads the following five Grounds for Relief:

> **Ground One:** Actual Innocence/Insufficient Evidence
>
> **Supporting Facts:** I was convicted based on the testimony of Amoreena Pauley. State's D.N.A. expert. The state used this expert to explain to the jury how and why my D.N.A. was at the crime scene. After the trial the Columbus Crime Lab admitted they erred in my D.N.A. results.
>
> **Ground Two:** Ineffective Assistance of Appellate Counsel
>
> **Supporting Facts**: My Appellate Counsel was ineffective because he failed to explain the significance in the new DNA results from the Columbus Crime Lab. My appellate counsel was my trial counsel so he knew that the motion he was filing wasn't new evidence, which is why the motion was only two pages, and four paragraphs long.
>
> **Ground Three:** Improperly Instructing the Jury
>
> **Supporting Facts:** The State rejected the jury's request to read the statement of the State's witness. When in fact the State used the statement as material during trial. The jury had doubts because of the State's witness inconsistencies.

15

**Ground Four:** Ineffective Assistance of [Trial] Counsel

**Supporting Facts:** My trial counsel failed to investigate potential evidence that would have helped show the jury of my innocence. My trial counsel also failed to present crucial D.N.A. evidence, that he himself discovered.

**Ground Five:** Prosecutorial Misconduct

**Supporting Facts:** 1) Eliciting false testimony, 2) False and misleading DNA evidence.

(Petition, ECF No. 1).

None of these Grounds for Relief was presented to the Ohio courts and they are thus barred by Petitioner's procedural default. However, if the Court accepts Petitioner's actual innocence claim, that will excuse procedural default as well as untimely filing. *McQuiggin, supra.*

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

**Ground One: Actual Innocence and Insufficient Evidence**

Petitioner claims he is entitled to habeas corpus relief because he is actually innocent. This

portion of Ground One should be dismissed for failure to state a claim upon which habeas corpus relief can be granted. *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993).

On the other hand, a claim that the evidence at trial was insufficient for conviction does state a claim under the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307 (1979). Petitioner's sole assignment of error on direct appeal was that his conviction was against the manifest weight of the evidence. The Tenth District Court of Appeals decided that claim on the merits and upheld the conviction. *State v. Lundy,* 2014-Ohio-3934, ¶ 3 (Ohio App. 10th Dist. Sept. 11, 2014)(copy at State Court Record, ECF No. 10, Ex. 153).

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.), adopted, 2011 WL 1979667, 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011)(Dlott, D.J.).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).

There is no requirement that the presence of a defendant at a crime scene be proved by DNA evidence; here the eyewitness testimony of Newman and Hayes was more than sufficient.

Petitioner's First Ground for Relief is without merit.

As part of his argument on Ground One, Petitioner accuses the prosecutor of misconduct for relying on the DNA evidence that was presented at trial. The prosecutor was relying on the evidence as it existed at the time of trial. Even assuming the new DNA evidence shows that the DNA evidence at the time of trial was erroneous, a prosecutor does not commit misconduct by presenting the scientific evidence she has which is vetted through application of Ohio R. Evid. 702.

**Ground Two: Ineffective Assistance of Appellate Counsel**

In his Second Ground for Relief, Petitioner claims that he received ineffective assistance of appellate counsel when his appellate attorney, who also acted as his trial attorney, filed a deficient motion for leave to file a delayed motion for new trial. The claim relates to the content of the first motion for new trial filed in November, 2014.

The Sixth Amendment right to counsel includes a right to the effective assistance of that counsel. The governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372,

379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

However, the constitutional right to effective assistance extends only to the first appeal of right.  The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).  Although Attorney Olah who filed the first motion for new trial happens to be the same attorney who tried the case, he was not acting as counsel on direct appeal[9].  Instead, he was acting as counsel in a post-conviction collateral proceeding, attempting to get permission to file a motion for new trial based on the DNA evidence.  Ground Two should be dismissed for failure to state a claim on which habeas corpus relief can be granted.

---

[9] A different attorney represented Petitioner on direct appeal.  See Appellant's Brief, State Court Record, ECF No. 10, Ex. 13.

**Ground Three:  Improperly Instructing the Jury**

In his Third Ground for Relief, Petitioner complains that the trial judge declined to read a witness statement to the jury during its deliberations, despite the jury's request.  Thus this is not a complaint about an erroneous instruction.

The trial judge, after consulting with counsel, declined to read the statement.  This is a common way of responding to a jury request for parts of the evidence because re-reading it unduly emphasizes a part of the evidence.  In any event, there is no constitutional right to have a jury hear part of the evidence twice.  Ground Three should be dismissed for failure to state a claim on which habeas corpus relief can be granted.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Petitioner complains he received ineffective assistance of trial counsel when his trial attorney failed to adequately investigate his case.  In part this Ground for Relief complains of the content of the November 2014 motion for leave to file a delayed motion for new trial.  As explained above, a defendant is not constitutionally entitled to effective assistance in collateral post-conviction proceedings. This portion of Ground Four is not cognizable in habeas corpus.

Petitioner also complains of counsel's performance at trial of not having Dr. Heinig testify, positing that she would have testified to a result the same as that in the revised Columbus Police DNA Report.  However, this Court has no way of knowing what Dr. Heinig would have said.  No copy of her report was ever introduced into the record and it cannot be added to the record now.

*Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

**Conclusion**

Having re-examined the case in light of Petitioner's Objections, the Magistrate Judge adheres to his prior recommendation that the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 8, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.