UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Markale Ian Lundy,

    Petitioner,

    v.

Warden, Southern Ohio
Correctional Facility,

    Respondent.

Case No. 2:24-cv-3806

Judge Michael H. Watson

Magistrate Judge Merz

## OPINION AND ORDER

In 2014, Defendant was found guilty in the Franklin County Court of Common Pleas of aggravated burglary, kidnaping, aggravated robbery, attempted murder, and felonious assault. Petition 1, ECF No. 1. He appealed his conviction to the Tenth District Court of Appeals, which affirmed. *Id.* at 2. In 2015, the Supreme Court of Ohio did not accept his petition for certiorari. *Id.*

On November 12, 2014, Petitioner moved for leave to file a motion for a new trial in the Franklin County Court of Common Pleas, but the court denied that motion. *Id.* at 3; ECF No. 10 at PAGEID ## 125–35. He moved again in 2017, but the court denied that motion also, and the Tenth District Court of Appeals affirmed. Petition 4, ECF No. 1; ECF No. 10 at PAGEID ## 136–37, 213–17, 300–08. Petitioner now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. *See generally* Petition, ECF No. 1.

## I. PROCEDURAL HISTORY

Petitioner filed his Petition in 2024 in this Court, raising five grounds for relief: (1) actual innocence/insufficient evidence; (2) ineffective assistance of appellate counsel; (3) improper handling of a jury question; (4) ineffective assistance of trial counsel; and (5) prosecutorial misconduct. Petition, ECF No. 1. Petitioner acknowledges that his Petition was untimely but argues that his actual innocence should excuse the delay. *Id.* at 13–14.

The Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court dismiss the Petition as time-barred on the basis that Petitioner did not meet the gateway standard for actual innocence. R&R 6–7, ECF No. 14. Specifically, the R&R concluded that Petitioner relied on a revised DNA report but that there was sufficient evidence to convict Petitioner even without the DNA evidence. *Id.*

Petitioner objected to the R&R, arguing primarily that the Magistrate Judge misinterpreted the significance of the revised DNA report and the weight the jury placed on the DNA evidence at trial. Obj., ECF No. 15.

The Court returned the matter to the Magistrate Judge, ECF No. 17, who withdrew the original R&R and issued a Substituted R&R ("SR&R"), ECF No. 21. The SR&R concluded that the revised DNA report was not exculpatory within the meaning of *Schlup v. Delo*, 513 U.S. 298 (1995). SR&R 11–13, ECF No. 21. Additionally, the SR&R concluded that Petitioner failed to present sufficient

evidence of actual innocence. *Id.* at 14–15. Alternatively, the SR&R recommended denying the Petition on the merits as meritless. *Id.* at 15–22.

Petitioner timely objected to the SR&R. Obj., ECF No. 22.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b), the Court reviews *de novo* those portions of the SR&R to which Petitioner objected. Fed. R. Civ. P. 72(b)(3). The Court can accept, reject, or modify the recommendation, receive further evidence, or return the matter to the Magistrate Judge. *Id.*

## III. ANALYSIS

### A. Petitioner's Petition is untimely.

"A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(2)(1). Here, "[t]he limitation period runs from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). As the SR&R explains, the state-court judgment became final on June 23, 2015. *See* ECF No. 10 at PAGEID # 124 (Supreme Court of Ohio's March 25, 2025, denial of jurisdiction on direct appeal); Sup. Ct. R. 13(1) (providing ninety days to petition for certiorari to the Supreme Court of the United States). Petitioner's deadline for filing the habeas Petition in this case thus expired on June 23, 2016.

"The one-year period of limitations is tolled, however, by the amount of time that a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending." *Hill v. Randle*, 27 F. App'x 494, 495 (6th Cir. 2001) (quoting 28 U.S.C. § 2244(d)(2)). The Court therefore considers whether either of Petitioner's motions for leave to file a delayed motion for a new trial toll the statute of limitations in this case.

Petitioner first moved on November 12, 2014, for leave to file a delayed motion for a new trial. ECF No. 10 at PAGEID # 125. The Franklin County Common Pleas Court denied that motion on December 29, 2014, *id.* at PAGEID # 131, and Petitioner did not appeal that decision.

Because Petitioner's first motion for leave to file a delayed motion for a new trial was filed and finally resolved before the statute of limitations began to run on his habeas petition, it does not toll the statute of limitations.

Moreover, Petitioner did not file his second motion for leave to file a delayed motion for a new trial until October 16, 2017. *Id.* at PAGEID # 136. The statute of limitations for his habeas petition expired on June 23, 2016, and because the second motion for leave was filed after that expiration date, it does not serve to toll the statute of limitations. *Hill*, 27 F. App'x at 496 ("Hill's motion for leave to file a delayed appeal and the motions for a new trial do not toll the statute of limitations because they were filed after the one-year limitations period expired . . . ." (citation omitted)).

In conclusion, the statute of limitations was not tolled by either of Petitioner's state-court post-conviction motions, and the statute of limitations ran

on June 23, 2016. Petitioner filed his Petition on July 30, 2024, which, as he concedes, was untimely.

**B.   Petitioner has not established a gateway showing of actual innocence to overcome the untimeliness of his Petition.**

A petitioner may overcome the untimeliness of a petition by proving a gateway claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations."). Successful gateway actual innocence claims are "rare," however, and require Petitioner to persuade this Court that it is more likely than not "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted); *id.* at 399. "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (internal quotation marks and citation omitted).

Petitioner's actual innocence claim hinges on a revised DNA report.[1]

---

[1] As the SR&R thoroughly explains, Petitioner at one time also argued that a newly discovered eyewitness account (the "Watson Affidavit") supported his actual innocence. SR&R 7–9, ECF No. 21; ECF No. 10 at PAGEID ## 136–59. Petitioner relies *only* on the revised DNA report for purposes of the Petition, however. *See generally* ECF No. 1.

Petitioner contends that the revised DNA report "dismantles the State's core scientific evidence" and leaves as proof of his guilt only the non-credible testimony of two eyewitnesses whom his defense attorney failed to properly impeach. Obj. 2, ECF No. 23. He asserts that the SR&R "disregards the cumulative impact of the DNA error and the witnesses' credibility," which, together, he argues, make it more likely than not that no reasonable juror would have found him guilty. Id.

Having reviewed the record *de novo*, the Court disagrees. As a preliminary matter, Petitioner repeatedly refers to the revised DNA report as "exculpatory," "discrediting" the DNA evidence offered at trial, or "excluding" Petitioner as a contributor. *E.g.*, Petition 4, 14, ECF No. 1; Obj. 3, ECF No. 23. But the revised report is not exculpatory; it nowhere concludes that Petitioner's DNA does not match the DNA found on the phone cord or curling iron cord. *See* ECF No. 1-4 at PAGEID # 35.

Rather, the revised DNA report merely negates Amoreena Pauley's trial testimony that (1) Petitioner's DNA types matched parts of the DNA mixture found on the curling iron cord at 9 of 15 loci, and (2) there was a 1 in 1,342 chance in the Caucasian population, a 1 in 2,428 chance in the African American population, and a 1 in 3,500 chance in the Hispanic population that a random person would have the same results. ECF No. 10-1 at PAGEID ## 748, 762, 766. In other words, although the revised DNA report negates the "pop stats" vis-à-vis the curling iron cord, it does *not* change Ms. Pauley's testimony regarding

the phone cord (that Petitioner could not be excluded as a contributor). *Compare id.* at PAGEID ## 753–54 *with* ECF No. 1-4 at PAGEID # 35 (showing no change to the conclusion regarding the phone cord). Similarly, even the revised DNA report seems to state that Petitioner could not be excluded as a contributor to the DNA found on the curling iron cord.[2] That is because, just like with the phone cord, the revised DNA report concludes only that the sample on the curling iron cord is below the standards required to perform pop stat analyses, which still means Petitioner cannot be excluded as a contributor. ECF No. 10-1 at PAGEID ## 761–62; ECF No. 1-4 at PAGEID # 35 ("Due to the limited data obtained, no interpretations will be made for the minor component of this DNA profile.").

Because the revised DNA report does not affirmatively exclude Petitioner as a contributor to the DNA found on either the phone cord or the curling iron cord, it does not show that he is actually innocent for purposes of establishing a gateway claim. *See, e.g., Farthing v. Forshey*, No. 24-3837, 2025 WL 270057, at *3 (6th Cir. April 2, 2025) (explaining that evidence that undermines the prosecutor's case does not necessarily establish actual innocence); *Houston v. Davis*, No. 24-3280, 2025 WL 590895, at *3 (6th Cir. Feb. 24, 2025) ("And further, even if, once again, the declaration is given its full weight, this testimony would only question or weaken the prosecution's theory of the case: it does not support

---

[2] Petitioner offered no affidavit from a qualified witness interpreting the revised DNA report.

or even indicate an alternate set of facts in which Houston did not commit the crime.").

Moreover, even setting aside that the revised DNA report is not the type of evidence required to prove actual innocence, the Court agrees with the SR&R: Petitioner has failed to show that it is more likely than not that no reasonable juror would have found Petitioner guilty had Ms. Pauley testified, essentially, that no conclusions could be drawn from the DNA collected on the curling iron cord.

Importantly, both victims in the case, Andrea Newman ("Newman") and SeTecia Hayes ("Hayes"), identified Petitioner as the perpetrator. Newman testified that she knew Petitioner, that he asked to come to her apartment the day of the crime, that she permitted him to come to her apartment, and that he committed the crime while at her apartment. ECF No. 10-1 at PAGEID ## 595–674. Although Hayes testified that she did not know Petitioner prior to the day of the crime, she also testified that she saw her attacker and that it was Petitioner. *Id.* at PAGEID ## 787–844. Phone logs confirmed that Newman communicated the day before and the day of the crime with the phone number she used to communicate with Petitioner, so phone logs supported Newman's testimony regarding how Petitioner came to be at her apartment the day of the crime. *Id.* at PAGEID ## 718–19, 875.

Given this evidence, the Court cannot conclude that it is more likely than not that no reasonable juror would have found Petitioner guilty, even if Ms. Pauley had testified that no conclusions could be drawn from the DNA evidence

on the curling iron cord. This is especially true given that Petitioner's counsel already impeached Newman and Hayes on their inconsistent stories and already stressed during closing argument that other labs would have referred to the DNA results in this case as "excluding"[3] Petitioner, *id.* at PAGEID ## 878–79, but the jury still found him guilty. In sum, the inconsistencies in the victims' various accounts of the events certainly weigh against giving their testimony great weight, but the jury was aware of those inconsistencies when it found Petitioner guilty. The "new evidence"—the revised DNA report—does not change the fact that Petitioner cannot be excluded as a contributor to the DNA found at the scene, and it certainly does not undermine the victims' testimony. The Court cannot say this is one of the rare cases where no reasonable juror could have convicted Petitioner.

## IV. CONCLUSION

Because the Court concludes that Petitioner has failed to make a gateway showing of actual innocence, it **DISMISSES** Petitioner's Petition **WITH PREJUDICE** as time-barred. In the alternative, Petitioner failed to object to the SR&R's alternative merits analyses, and the Court **ADOPTS** the same without performing a *de novo* review.

---

[3] As Ms. Pauley testified, although the Columbus Police Crime Lab uses the term "cannot be excluded" to describe situations, like here, where the DNA sample is insufficient to make a DNA profile, other labs use the term "inconclusive" or even "can be excluded[.]" ECF No. 10-1 at PAGEID # 755, 772. The jury was fully aware of the differences in terminology when it deliberated.

Reasonable jurors could not disagree with the Court's conclusion that Petitioner failed to establish a gateway actual innocence claim such that his Petition is untimely. Accordingly, the Court **DECLINES** to issue a certificate of appealability. The Court also **CERTIFIES** that any appeal would be objectively frivolous and that the Sixth Circuit should not permit Petitioner to proceed *in forma pauperis*. The Clerk **SHALL** issue judgment for Respondent and close this case.

**IT IS SO ORDERED.**

                                            */s/ Michael H. Watson*
                                         **MICHAEL H. WATSON, JUDGE**
                                         **UNITED STATES DISTRICT COURT**